IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:10-CV-167-FL

| | |
|---|---|
| MARK BUCHANAN, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-32, DE-36] pursuant to Fed. R. Civ. P. 12(c). Claimant Mark Buchanan ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on 14 March 2008, alleging disability beginning 13 April 2005. (R. 10). Both claims were denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on 23 February 2010, at which Claimant was represented by counsel and a vocational expert ("VE")

appeared and testified. (R. 25-57). On 19 April 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 7-19). On 18 September 2010 the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into her written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2), 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to consider whether Claimant's impairments meet Listing 1.04; (2) improper evaluation of Claimant's treating physicians' opinions; and (3) improper assessment of Claimant's residual functional capacity ("RFC"). Pl.'s

3

Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 1, 7, 9-10.

## FACTUAL HISTORY

### I.     ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 12). Next, the ALJ determined Claimant had the severe impairment of degenerative disc disease ("DDD"). *Id.* The ALJ also found Claimant had a nonsevere impairment of depression. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14). In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found Claimant has no limitations in activities of daily living, social functioning or concentration, persistence or pace and has experienced no episodes of decompensation. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work,[1] could occasionally balance, stoop, kneel and crawl and should avoid concentrated exposure to hazards. *Id.* In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 15). At step four, the ALJ concluded

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

Claimant had the RFC to perform the requirements of his past relevant work. (R. 18).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was forty-five years old and unemployed. (R. 29). Claimant has an associate's degree and is pursuing a degree in information technology. (R. 29-30). Claimant's past relevant work includes car salesman, machine operator, creeler and customer service representative. (R. 30).

Claimant testified that he is unable to work due to pain and other symptoms which Claimant attributed to an automobile accident. (R. 39). In particular, Claimant testified that he suffers from short-term memory problems and pain in his lower back, right side of his neck and his fingers and arms. (R. 40, 48, 51). Claimant testified further the pain in his back radiates to his left leg and foot and when walking, it feels like he is dragging his left foot. (R. 40). Claimant takes pain medication, which provides some relief; however, the medication makes him fall asleep. (R. 40). Claimant also takes medication for his nerves as well as blood pressure and cholesterol medications. (R. 41). Claimant testified that his doctors at the Durham Veterans Administration Medical Center ("VA Medical Center") have discussed fusion surgery; however, Claimant stated that upon reviewing the procedure online, his wife stated she was against Claimant undergoing fusion surgery. (R. 41). No further testimony was elicited as to whether Claimant is otherwise pursuing fusion surgery. Claimant testified further that in December 2009, he was diagnosed with fibromyalgia. (R. 43).

Claimant testified that he can sit for no more than twenty minutes without experiencing numbness in his left leg and foot and can stand up to fifteen minutes. (R. 46). Claimant can lift a gallon of milk with his right hand but not his left hand. (R. 50). Claimant has difficulty writing and experiences numbness in his fingers when he writes. (R. 51).

Claimant testified that he spends his day sitting or laying down. (R. 46). Claimant attends church weekly and participates in the church choir. (R. 447). Claimant drives approximately four to five hours a week but primarily relies on his wife out of fear of falling asleep. (R. 43). Claimant, a former competitive boxer and trainer, visits a boxing club for approximately 90 minutes a day two times per week to assist boxers with their form. (R. 44). Claimant accompanies his wife to the grocery store and either leans on the cart when walking or rides a motorized cart. (R. 45).

### III. Vocational Expert's Testimony at the Administrative Hearing

Melissa Stewart testified as a VE at the administrative hearing. (R. 52-56). After the VE's testimony regarding Claimant's past work experience (R. 53), the ALJ asked the VE to assume a hypothetical individual of the same age and prior work experience as Claimant with a high school education and posed three hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual had the physical capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand and walk for at least six hours in an eight-hour workday, occasionally balance, stoop, kneel, crawl and should avoid concentrated exposure to hazards. (R. 53-54). The VE responded in the affirmative, stating the individual could perform Claimant's past relevant work as an automotive salesperson (DOT #273.357-014) and sterilizer (DOT #599.585.010). (R. 19, 54). Second, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual had the physical capacity to occasionally lift 10 pounds, sit and walk for up to six and two hours, respectively, in an eight-hour workday, occasionally balance, stoop, kneel and crouch and should avoid concentrated exposure to hazards. *Id.* The VE responded in the negative but stated other jobs existed that the hypothetical individual could perform, such as final assembler (DOT #713.687-018), surveillance system monitor

(DOT #379.367-010) and semiconductor loader (DOT #726.687.030). (R. 54-55). Finally, the ALJ asked whether the individual in the second hypothetical could perform the above-referenced positions if the individual required a sit/stand option with the ability to alternate between sitting and standing throughout the workday. (R. 55). The VE testified that approximately fifty percent of the surveillance system monitor positions would tolerate a sit/stand option and explained her testimony was based on her experience in the vocational field. (R. 56). The VE testified that no work would be available if an individual needed to take unscheduled breaks during the workday to lie down or sleep due to medication side effects. *Id.*

## DISCUSSION

I.  **The ALJ properly considered whether Claimant's impairments in combination meet or equal a listing.**

Claimant argues that the ALJ failed to consider whether his impairments are severe enough to meet or equal the requirements of Listing 1.04 (disorders of the spine), and in particular Listing 1.04A. Pl.'s Mem. at 12-13.

To be disabled under the listings, the claimant may present evidence either that the impairment meets or is "medically equivalent" to a listed impairment. *See Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986); *see also* 20 C.F.R. §§ 404.1526, 416.926. "For a claimant to qualify for benefits by showing that his . . . combination of impairments is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original). "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." S.S.R. 96-6p, 1996 SSR LEXIS 3, at *7-8, 1996 WL 374180, at *3. In order to determine whether a medical

impairment equals a listing, the ALJ is bound to "consider all evidence in [claimant's] case record about [the] impairment(s) and its effects on [claimant] that is relevant to this finding.... [The ALJ] also consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. §§ 404.1526(c), 416.926(c).

Listing 1.04 refers generally to disorders of the spine, such as degenerative disc disease, resulting in the compromise of a nerve root or the spinal cord. *See* C.F.R. § 404, Subpt. P., App. 1, § 1.04. Under Listing 1.04A, a claimant must produce evidence of nerve root compression characterized by the following clinical findings: (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss; and, (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). *Id.* § 1.04A.

In making her step-three finding, the ALJ found the medical evidence did not support a finding that Claimant's DDD met or equaled a listing, stating this finding "is consistent with that of the state agency expert medical consultant . . . and no medical evidence has been submitted subsequent to this review that would alter that conclusion."[2] (R. 14). Claimant contends that the ALJ was "negligent" in failing to mention Listing 1.04A in her step-three analysis and argues further that the medical evidence indicates Claimant meets the criteria of Listing 1.04A. Pl.'s Mem. at 7-8. The Defendant argues that, based on the medical evidence of record, the ALJ was not required to discuss Listing 1.04A since there was a lack of evidence of a nerve root compression. Def.'s Mem. at 13. Defendant argues further that even if evidence of nerve root compromise exists, Claimant's

---

[2] Neither the ALJ nor Defendant cite the exhibit containing the relevant state agency expert's evaluation and the court is unable to locate the evaluation in the record provided to the court. Based on the analysis below, however, the court finds any error harmless.

8

examinations do not reveal any motor loss or weakening. Def.'s Mem. at 14.

An ALJ is only required to "explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." *Kelly v. Astrue*, No. 5:08-cv-289-FL, 2009 U.S. Dist. LEXIS 40154, at *16, 2009 WL 1346241, at *5 (E.D.N.C. May 12, 2009) (quoting *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md.1999)). While an identification of the relevant listings and an explicit comparison of a claimant's symptoms thereto would aid the court in its review of an ALJ's decision, "an exhaustive point-by-point discussion [as to whether a claimant's disabilities meet or equal a listing is not required] in all cases." *Russell v. Chater*, No. 94-2371, 60 F.3d 824, 1995 U.S. App. LEXIS 17254, at *8, 1995 WL 417576, *4 (4th Cir. July 7, 1995) (unpublished). Rather, an ALJ's step-three finding will be upheld, even where she fails to explicitly address why specific listings were not met, where she has discussed in detail the evidence presented and adequately explained her consideration thereof. *See Green v. Chater*, No. 94-2049, 1995 U.S. App. LEXIS 21970, at *8, 1995 WL 478032, at *3 (4th Cir. Aug. 14, 1995) (unpublished) (finding the ALJ had adequately explained his evaluation of the claimant's impairments, even though he did not explicitly address why specific listings were not met); *accord Young v. Comm'r of Soc. Sec.*, No. 3:09-01676-JMC-JRM, 2010 U.S. Dist. LEXIS 100228, at *17, 2010 WL 3814415, at *6 (D.S.C. Sept. 2, 2010) (explaining "[a]n ALJ's failure to explicitly refer to a Listing by name does not, by itself, require remand, provided that the ALJ's decision is sufficient to permit the reviewing court to trace the ALJ's reasoning") (citing *Rice v. Barnhart*, 384 F.3d 363, 369-370 (7th Cir. 2004)). Although the ALJ did not identify the specific evidence supporting her step-three determination, her discussion of the evidence and explanation of her conclusions in her RFC assessment indicate that

she sufficiently considered whether Claimant's back impairment met or equaled a listing. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 U.S. Dist. LEXIS 13893, at *7-8, 2009 WL 455414, at *3 (E.D.N.C. Feb. 23, 2009) (explaining although "[s]uch collapsing of the analysis of the evidence by an ALJ is not the preferred form of opinion writing for an ALJ because it makes review of his opinions more difficult, [] it is not necessarily reversible error") (citation omitted).

Claimant contends that medical records indicate he has two disorders of the spine, namely: DDD and herniated nucleus pulposus. As a result of these disorders, Claimant asserts that, in satisfaction of the A criteria of Listing 1.04, he has nerve root compression causing (1) neuro-anatomical distribution of pain with pain spreading from his lower back through his legs and into his feet; (2) limitation of motion in his lumbar spine; (3) loss of sensation in his feet and persistent numbness that spreads through his legs; and (4) positive straight leg raising tests. Pl.'s Mem. at 8. However, as Defendant argues, Claimant's lumbar spine MRIs do not indicate that Claimant's suffers from nerve root compression. For example, while a June 2006 MRI revealed L5 spondylolysis, sclerosis and "mild associated disc space loss of the L5-S1 level," the record does not mention nerve root compromise. (R. 16, 378). An August 2006 MRI also revealed L5 spondylolysis but specifically noted "no evidence of foraminal narrowing or neural impingement." (R. 17, 375). Claimant also underwent an MRI in September 2009. While Claimant characterizes the MRI as evidencing "spinal cord compromise," *see* Pl.'s Mem. at 8, the record is inconclusive. In particular, the MRI, which revealed "stable appearance of the lumbar spine," specifically indicates "no significant spinal canal or neuroforaminal narrowing." (R. 18, 544); *cf. Young*, 2010 U.S. Dist. LEXIS 100228, at *19, 2010 WL 3814415, at *7 (remanding the case in light of claimant's lumbar spine MRI which "showed 'likely' nerve root compression").

In addition to Claimant not having been diagnosed with nerve root compression caused by his DDD, he did not display all the symptoms mandated by the regulations in order to meet Listing 1.04A. In particular, the evidence of record does not indicate atrophy with associated muscle weakness accompanied by sensory or reflex loss. For example, an August 2006 examination noted normal lower extremity bulk, tone and power (R. 398), a November 2007 examination indicated no gross deformity regarding the back and spine and grossly intact neurological testing (R. 354), a June 2009 examination also revealed grossly intact neurological testing (R. 568) and a December 2009 examination indicated no muscle atrophy and good muscle bulk and tone (R. 504). (R. 15-18). The court's review of these records indicates there was substantial evidence on which the ALJ based her step-three determination and accordingly, finds Claimant contention to the contrary without merit.

## II. The ALJ did not err in evaluating the opinions of Claimant's treating physicians.

Claimant contends the ALJ should have accorded controlling weight to the opinions of Claimant's treating sources, and in particular, Douglas Watford, M.D., Claimant's treating physician, and Edwin Cooper, Jr., M.D., an orthopaedic rehabilitation examining consultant. Pl.'s Mem. at 9. This court disagrees.

The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Hunter v. Sullivan*, 993 F.2d 31,

11

Case 4:10-cv-00167-FL Document 38 Filed 08/15/11 Page 11 of 20

35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted); *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

When the ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weigh the opinion pursuant to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship between the physician and the claimant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record and (5) whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 SSR LEXIS 9, at *12, 1996 WL 374188, at *5.

A.  <u>Dr. Watford</u>

The first medical opinion at issue appeared in a progress report dated 10 July 2007 wherein Dr. Watford stated that Claimant "is disabled [secondary] to [low back pain] sciatic nerve

12

Case 4:10-cv-00167-FL Document 38 Filed 08/15/11 Page 12 of 20

involvement/compression and remains under medical care." (R. 294). The ALJ acknowledged implicitly the length, frequency, nature and extent of Claimant's treatment relationship with Dr. Watford between April 2005 and June 2007 via multiple references to his treatment notes. (R. 235, 238, 241-43, 245, 255, 276, 294). However, the ALJ did not accord controlling weight to the June 2007 opinion because it was unsupported by Dr. Watford's medical evaluations and treatment notes in which he noted improvement. (R. 18). The ALJ noted further that Dr. Watford's opinion was a finding of fact reserved to the Commissioner. *Id.*; *see* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (explaining a medical source's statement that a claimant is disabled is an issue reserved to the Commissioner); S.S.R. 96-5p, 1996 SSR LEXIS 2, at *5, 1996 WL 374183, at *2 (explaining "our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner").

Claimant essentially contends that the ALJ improperly weighed the evidence before her. However, the court's duty is to determine if substantial evidence supports the ALJ's conclusions – not to reweigh conflicting evidence. *See Mastro*, 270 F.3d at 176 (citation omitted). The ALJ thoroughly summarized Dr. Watford's findings upon examination, noting in particular positive straight leg raise testing, numbness and tingling in the extremities, and decreased range of motion – findings relied on by Claimant in arguing the ALJ's consideration of Dr. Watford's opinion is not supported by substantial evidence. However, the ALJ correctly noted that numerous treatment records by Dr. Watford indicate improvement upon examination. (R. 235, 241-42, 245, 255). Furthermore, the June 2007 contains no medical examination warranting the legal conclusion that Claimant is disabled. Accordingly, the court finds that the ALJ did not err in discounting the Dr. Watford's opinion. *See Craig*, 76 F.3d at 589 ("Where conflicting evidence allows reasonable minds

13

to differ as to whether a claimant . . . is disabled, the responsibility for that decision falls on [the Commissioner]").

B.  Dr. Cooper

The second medical opinion at issue is that of Dr. Cooper, who performed a one-time evaluation of Claimant on 11 March 2008 and opined that Claimant's "present situation with the ongoing neck and back pain, and the short-term memory loss make him totally disabled for any type of work at this point, pending further evaluation and treatment. The length of his disability is not known." (R. 369). The ALJ assigned Dr. Cooper's opinion "no weight," stating it was not "well supported by medical acceptable clinical findings and lab diagnostic techniques, is inconsistent with other substantial medical evidence of record and [] is conclusory and inconsistent with treatment notes." (R. 18). Review of the physical examination performed by Dr. Cooper supports the ALJ's decision. In particular, examination findings include moderate limitation of lumbar motion, full range of motion of both upper extremities, full range of motion of his hips and knees and some weakness in the gastrocnemius muscle of the left leg. (R. 368). In sum, Dr. Cooper observed only mild to moderate limitations which is inconsistent with his legal conclusion that Claimant is disabled. Moreover, as the ALJ noted, this opinion is inconsistent with other medical evidence, including the September 2009 lumbar spine MRI which showed a stable appearance. (R. 18, 544).

The absence of a sufficient rationale for the opinions of both Drs. Watford and Cooper and the inconsistency between these opinions and other medical evidence in the record reasonably downgraded the true evidentiary value of both opinions. Additionally, the ALJ complied with S.S.R. 96-2p by making her decision sufficiently specific for subsequent viewers to understand the weight accorded the opinions of Drs. Watford and Cooper and the reasons for said weight. *See Koonce v.*

*Apfel*, No. 98-1144, 166 F.3d 1209, 1999 U.S. App. LEXIS 307, at *7, 1999 WL 7864, at *2 (4th Cir. 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ's consideration of both opinions is supported by substantial evidence.

### III. The ALJ's RFC determination is supported by substantial evidence.

Claimant contends the ALJ's RFC determination is not supported by substantial evidence. Pl.'s Mem. at 10. This court disagrees.

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *5, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *6, 1996 WL 374184, at *5. The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *21, 1996 WL 374184, at *7.

In finding Claimant has the RFC to perform light work, the ALJ relied on objective medical evidence of record, including physical examinations described above as well as diagnostic findings indicating Claimant had a stable lumbar spine. (R. 15-18). The ALJ noted further that Claimant's physical examination, wherein Dr. Cooper opined that Claimant is disabled due to ongoing neck and

back pain and short-term memory loss, occurred during the same timeframe as two consultative examinations which indicate poor effort on Claimant's part. (R. 17, 369, 439, 440, 452). Finally, in evaluating Claimant's statement that "he doesn't think he can do much right now" (R. 336), made during a during a 31 December 2007 physical therapy general evaluation at the VA, the ALJ opined that Claimant's wife "on the other hand, stated during this same appointment that he 'was very active and exercised 2 times a day.'" (R. 18, 336). Claimant contends the ALJ's RFC finding "is not borne out by the medical record," relying in particular on (1) the ALJ's failure to recognize that Claimant's 31 December 2007 statement did not contradict that of his wife who was expressly discussing Claimant's "prior level of function," (R. 336);(2) evidence that Claimant suffers from a memory impairment (R. 338-46); and (3) a VA treatment record dated 31 December 2007 wherein Claimant was prescribed a cane (R. 337). Pl.'s Mem. at 10-11.

Regarding the allegedly contradictory statements made by Claimant and his wife, as Defendant concedes, no inconsistency exists as Claimant was discussing his present activities while Claimant's wife was discussing Claimant's activities prior to his back injury. *See* Def.'s Mem. at 17 n.3. Upon considering the ALJ's decision in its entirety, including Claimant's testimony that he attends church weekly, participates in the church choir twice a month and visits a boxing club for approximately 90 minutes a day two times per week to assist boxers with their form, the court finds the ALJ's inaccurate reading of the December 2007 treatment record harmless error.

As for Claimant's reliance on his memory impairment as evidence that Claimant cannot work, the court disagrees. The ALJ acknowledged Claimant's 17 December 2007 VA visit regarding complaints of ongoing depressive symptoms and possible anxiety. (R. 12, 338). However, the ALJ found Claimant's mental impairment of depression caused no more than a minimal limitation in

Case 4:10-cv-00167-FL Document 38 Filed 08/15/11 Page 16 of 20

Claimant's ability to perform basic mental work activities. (R. 12). As the ALJ noted, Claimant's thought form was linear, logical and goal-directed, his judgment and cognition good and he answered questions appropriately. (R. 13, 340). Evidence further supporting the ALJ's finding includes the psychological consultative examinations performed by Jerome B. Albert, Ph.D., and Ronnie H. Mozingo, M.A., the results of which indicated a lack of effort on Claimant's part. (R. 13, 438-40, 450-52). For example, Dr. Albert noted that when asked how many hours in a day and in what direction sun sets, Claimant answered "20 something" and "the east," respectively. (R. 13, 438). Believing Claimant was intentionally "making himself look bad," Dr. Albert was unable to assess Claimant's cognitive, intellectual or memory functioning. *Id.* Similarly, Mr. Mozingo noted that Claimant simply stopped taking the Wechsler Memory Scale-III examination because Claimant said "he could not remember." (R. 13, 451). Nevertheless, Mr. Mozingo opined that Claimant appeared capable of understanding, retaining and following simple instructions. (R. 13, 452). Accordingly, these examinations do not evidence an inability to work and the ALJ appropriately relied on these findings in making her RFC finding.

While the ALJ acknowledged and discussed the 31 December 2007 physical therapy general evaluation performed by a VA physician, her summary did not include the prescription of a cane. (R. 17, 337). However, in summarizing Dr. Cooper's March 2008 evaluation, the ALJ noted Dr. Cooper's observation that Claimant prefers to use a cane in his right hand and experiences improved balance with the cane. (R. 17, 368). This observation was incorporated into RFC evaluations by Sankar Kumar, M.D., and Melvin L. Clayton, M.D., both of whom, in noting Claimant's use of a cane, found Claimant limited to occasional balancing only – a limitation also found by the ALJ. (R. 14, 18, 443, 448, 483, 488). In raising the issue of the prescribed cane, however, Claimant does not

17

Case 4:10-cv-00167-FL Document 38 Filed 08/15/11 Page 17 of 20

contend that he is more limited in his ability to balance than that found by the ALJ. Rather, Claimant contends the use of a cane "is not compatible with walking around showing cars to customers . . ." Pl.'s Mem. at 11. That is, Claimant essentially argues that the ALJ erred in her step-four finding that Claimant was capable of performing past relevant work.

Upon assessing a claimant's RFC, the ALJ compares the RFC with the physical and mental demands of claimant's past relevant work ("PRW") and then determines whether claimant's impairment(s) prevent claimant from performing such work. 20 C.F.R. §§ 404.1520(e)(f); 416.920(e)(f). "The claimant is the primary source for vocational documentation." S.S.R. 82-62, 1982 SSR LEXIS 27, at *6, 1982 WL 31386, at *3. In determining a claimant's ability to do PRW, the ALJ must consider the following:

1. the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements;
2. medical evidence establishing how the impairment[s] limit[] [his or her] ability to meet the physical demands and mental requirements of such work; and
3. in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles* ["DOT"], etc., on the requirements of the work as generally performed in the economy.

*Id.* "[A] claimant will be found "not disabled" if [s]he is capable of performing [her] past relevant work either as [s]he performed it in the past *or* as it is generally required by employers in the national economy." *Pass*, 65 F.3d at 1207; *see also* S.S.R. 82-61, 1982 SSR LEXIS 31, 1982 WL 31387.

Here, the ALJ found Claimant was capable of performing his PRW as an automotive salesperson and sterilizer. (R. 19). The ALJ made the necessary findings in conformity with the guidelines listed above. First, the ALJ considered Claimant's allegations regarding his pain and other symptoms, in addition to Claimant's contention that he is unable to perform his past work due

to *inter alia* standing and sitting limitations. (R. 15). However, the ALJ concluded such statements were not entirely credible based on the objective medical evidence discussed in detail above. (R. 15). Second, as summarized above, the ALJ reviewed the medical evidence regarding the impact of Claimant's impairments on his ability to meet the physical and mental demands of light work. Based on the medical records, the ALJ noted Claimant's impairments do not prevent him from performing a reduced range of light work. (R. 18). Finally, the ALJ relied on vocational expert testimony as supplementary information. At the administrative hearing, the VE testified as to Claimant's work history, noting that Claimant's RFC, which includes a balance limitation, accommodated the positions of both automotive salesperson and sterilizer. (R. 19, 54). Claimant's counsel did not cross-examine the VE. *See Johnson v. Chater*, 969 F. Supp. 493, 509 (N.D. Ill. 1997) ("[W]hen an applicant for social security benefits is represented by counsel, the [ALJ] is entitled to assume that the applicant is making his strongest case for benefits.") (quoting *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)).

Based on Claimant's RFC, which is supported by substantial evidence, the ALJ properly concluded Claimant is capable of performing his previous work as a automotive salesperson and sterilizer. Moreover, even if the ALJ should Claimant correctly contends that the ALJ erred in finding Claimant incapable of returning to his past relevant work as an automotive salesperson, Claimant does not contest the ALJ's finding, based on VE testimony, that Claimant can return to his past relevant work as a sterilizer. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) (explaining in determining past relevant work, the ALJ is entitled to rely on the testimony of a VE who "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as

generally performed in the national economy"); *see Currie v. Astrue*, No. 7:09-CV-73-BO, 2010 U.S. Dist. LEXIS 87233, at *4 (E.D.N.C. Aug. 21, 2010) (finding the ALJ's failure to inquire about an inconsistency in the record as "harmless error because no substantive inconsistency existed") (citations omitted); *Austin v. Astrue*, No. 7:06-CV-00622, 2007 U.S. Dist. LEXIS 77892, at *18, 2007 WL 3070601, *6 (W. D. Va. Oct. 18, 2007) (holding that "[e]rrors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error") (citing *Camp v. Massanari*, 22 Fed. Appx. 311 (4th Cir. 2001)). For the foregoing reasons, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-32] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-36] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 15th day of August, 2011.

Robert B. Jones, Jr.
United States Magistrate Judge